IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | | |
|---|---|---|
| **SYVENO JEWELL WRIGHT** | ‖ | **No. 11-CV-4003-DEO** |
| Plaintiff, | ‖ | |
| vs. | ‖ | **ORDER ON DEFENDANT'S MOTION TO DISMISS, MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL** |
| **BRYON KELLEY, CINDY OLSON, ALBIN CARLSON, JANNE JOHNSON AND MARY BENSON,** | ‖ | |
| Defendants. | ‖ | |

_____

## I.  INTRODUCTION AND BACKGROUND

Currently before the Court is Defendants' Motion to Dismiss (Docket No. 29), Defendants' Motion for Summary Judgment (Docket No. 33), and Plaintiff Syveno Wright's [hereinafter Mr. Wright] Motion for Voluntary Dismissal (Docket No. 43).  Mr. Wright is an involuntarily committed patient at the Civil Commitment Unit for Sex Offenders (CCUSO) in Cherokee, Iowa.[1]  The parties appeared for a hearing on the

_____

[1] The patients at CCUSO "have served their prison terms but in a separate civil trial have been found likely to commit further violent sexual offenses."  Iowa Department of Human Services   Offer   #401-HHS-014:   CCUSO,   1 http://www.dhs.state.ia.us/docs/11w-401-HHS-014-CCUSO.pdf, last visited September 30, 2013.

pending motions on September 16, 2013.[2] After listening to the parties' arguments the Court took the matters under consideration and now enters the following.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As noted above, Mr. Wright is a patient civilly committed as a sexually violent predator. He resides at CCUSO, the sexually violent predator unit of the Iowa Department of Human Services located in Cherokee, Iowa. Mr. Wright filed the present 42 U.S.C. § 1983 pro se Complaint on January 7, 2011. On April 21, 2011, this Court entered an order directing the parties to review Mr. Wright's Complaint to assess whether it should be joined to 05-CV-4065, a class action made up of CCUSO patients. On June 15, 2011, Magistrate Zoss entered an Order consolidating Mr. Wright's Complaint with the class action, 05-CV-4065. Docket No. 12. Prior to approving a settlement agreement in the class action, this Court severed Plaintiff's claim. 05-CV-04065, Docket No. 140. On August 31, 2012, the Court conducted an initial review of Mr. Wright's claim. The Court appointed Bob Tiefenthaler as Mr.

---

[2] At the hearing the Court verbally denied Defendants' Motion to Bifurcate/Sever, Docket No. 26. The parties agreed that Motion had become moot.

2

Wright's counsel, granted in forma pauperis status, and allowed Mr. Wright's pro se Complaint, Docket No. 18, to proceed (Docket No. 17).

In the pro se Complaint, Mr. Wright alleged:

> On November 16, 2009... I was threatened verbally w/death, and "STABBED" by Patient Daniel Paul Whitney with... a black bic ink pen... Staff... failed or refused to do their statutory responsibility in protecting me from harm... Janne Johnson, who look[s] for ways to save the State of Iowa money, said, "its just a superficial injury that you sustained, you'll be okay."...

Docket No. 18, p. 2-3.

On October 19, 2012, Mr. Wright filed a second pro se Complaint (12-CV-4095, Docket No 1, Att. 1). In that Complaint, Mr. Wright alleged:

> Plaintiff complained to Defendant Janne Johnson, who is no longer employed at CCUSO, [that] Plaintiff was having incontinence issues defendant Johnson's medical diagnosis was that Plaintiff had drank too much water before bedtime... As time progressed, Plaintiff's symptoms of incontinence progressed and became worse... when Plaintiff had to urinate, Plaintiff used a plastic container because Plaintiff could not make it to the restroom...

Docket No. 24, p. 2-3.

Mr. Wright alleges that Nurse Benson did not detect Mr. Wright's prostate cancer until she conducted a blood test associated with a routine physical in February of 2011.  <u>Id.</u> Mr. Wright also alleged that Defendant Mary Benson refused to perform or provide adequate prostate exams. <u>Id.</u>, p. 3.

On November 28, 2012, the Court entered an Initial Review Order which consolidated Mr. Wright's second pro se Complaint with the above captioned case (Docket No. 23).  On November 28, 2012, the Defendants filed a Motion to Sever the two claims (Docket No. 26).  The Court denied that Motion during the hearing on September 16, 2013.

The relevant factual allegations will be discussed further below.

## III.  ISSUES

As stated above, currently before the Court are Defendants' Motion to Dismiss [MTD] (Docket No. 29), Defendants' Motion for Summary Judgement [MSJ] (Docket No. 33), and Mr. Wright's Motion for Voluntary Dismissal (Docket No. 43).  In the MTD, the Defendants argue that Defendant Janne Johnson should be dismissed from this case because any

claim against her is barred by the personal injury statute of limitations.

In the MSJ, the Defendants make three primary arguments. First, the Defendants argue that they were not deliberately indifferent in failing to protect Mr. Wright in reference to the fight/stabbing that occurred on November 16, 2009. Second, the Defendants argue that they were not deliberately indifferent in providing medical care leading up to Mr. Wright's prostate cancer. Third, the Defendants argue that they are entitled to qualified immunity and are not personally responsible for Mr. Wright's damages.

In the Voluntary Motion to Dismiss, Mr. Wright requests that he be allowed to dismiss all claims related to the November 16, 2009, incident without prejudice. The Defendants filed a resistence, Docket No. 44, which argues that the Court should adjudicate that claim in the context of the Motion for Summary Judgment and deny the Voluntary Motion to Dismiss. Accordingly, it is agreed by the parties that Mr. Wright's claim regarding the November 16, 2009, fight will not proceed. The question remaining is whether the Court will dismiss it

without prejudice or whether the Court will dismiss it on the merits with prejudice.

The Court will consider each issue below.

## IV. ANALYSIS

### A. Motion to Dismiss Janne Johnson

This argument pertains exclusively to one Defendant, Janne Johnson. As Ms. Kraemer, the Defendants' attorney, explained during the hearing, Ms. Johnson has not worked for CCUSO for a number of years. Ms. Kraemer stated that the numerous law suits arising out of Ms. Johnson's tenure at CCUSO is negatively impacting Ms. Johnson's ability to get professional insurance, etc. Consequently, the Defendants vigorously argue that the Court should dismiss Ms. Johnson from this case. Specifically, the Defendants argue that any claim against Ms. Johnson is barred by the statute of limitations.

The Court is aware of the imposition these lawsuits are on Ms. Johnson, and has sympathy for her situation. However, the Court is persuaded that in this case, it would be inappropriate to dismiss Ms. Johnson because she was intimately involved in the treatment of Mr. Wright.

As will be discussed in greater detail below, Mr. Wright alleges that Ms. Johnson was involved in his treatment at CCUSO several years ago. Mr. Wright states that he told Ms. Johnson about certain urinary issues, but she ignored him. Docket No. 42, Ex. 1, p. 1. Mr. Wright alleges that his urinary issues were so severe, he could not make it through the night without having to relieve himself in a bedside receptacle. <u>Id.</u> Mr. Wright states that even though he complained of his weak bladder to Ms. Johnson, she threatened him with disciplinary action for relieving himself in a 'coffee jar' during the night. <u>Id.</u> Mr. Wright alleges that these were early indications of his prostate problems, which eventually became cancer. See Docket No. 42, Ex. 1, p. 2.

It is undisputed in the record that in 2011, Mr. Wright was diagnosed with prostate cancer and that to treat that cancer, his prostate was removed. Docket No. 33, Att. No. 1, p. 9-10. Mr. Wright alleges that had he received proper care, his cancer would have been discovered much sooner, and could have been treated with less invasive means, including radiation. This allegation may or may not be supported by the statements of Dr. Tracy, Mr. Wright's treating physician, who

apparently conversed with both Mr. Tiefenthaler and Ms. Kraemer, but that conversation/deposition has not been made part of the record. See the disagreement between counsel: Defendant's Statement of Facts, Docket No. 33, Att. No. 1, p. 10; Plaintiff's Statement of Facts, Docket No. 42, Att. No. 1, p. 2-4; Defendant's Reply to Statement of Disputed Facts, Docket No. 45, Att. No. 1, p. 1-3.

As discussed above, the damage Mr. Wright complains of is advanced cancer which required surgical treatment. Mr. Wright alleges that advanced cancer was caused, in part, by Ms. Johnson's alleged malfeasance. The cancer was not discovered until 2011. Accordingly, as argued by Mr. Wright, there is a plausible argument to be made that the statute of limitations did not begin to run until the date the cancer was discovered.

Under Iowa law, the statute of limitations for personal injury actions begins to run at the time a plaintiff discovers or in the exercise of reasonable care should have discovered "all the elements of the action." <u>Franzen v. Deere & Co.</u>, 377 N.W.2d 660, 662 (Iowa 1985). This latter concept-"should have discovered"-is commonly referred to as inquiry notice. <u>Sparks v. Metalcraft, Inc.</u>, 408 N.W.2d 347, 352 (Iowa 1987).

See also <u>Buechel v. Five Star Quality Care, Inc.</u>, 745 N.W.2d 732, 736 (Iowa 2008).  Damage is an essential element of personal injury tort.  <u>Bockelman v. State, Dep't of Transp.</u>, 366 N.W.2d 550, 552 (Iowa 1985).  Since the damage was not discovered until 2011, Mr. Wright had not discovered "all" of the elements of his claim until that date.  This portion of Mr. Wright's claim was filed in 2012.  2012 is within the two year statute of limitations.  Accordingly, the Court is persuaded that Ms. Johnson should not be dismissed on statute of limitation grounds and the Defendants' Motion to Dismiss Ms. Johnson, Docket No. 29, must be denied.

**B.  Motion for Summary Judgment**

**1.  Standard**

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56(c). A fact is *material* if it is necessary "to establish the existence of an element essential to [a] party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). There is a *genuine issue* as to a material fact if, based on the record before the court, a "rational trier of fact" could find for the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When considering a motion for summary judgment, a "court must view the evidence in the light most favorable to the nonmoving party . . . ." Hutson v. McDonnell Douglas Corp., 63 F.3d 771 (8th Cir. 1995). This requires a court to draw any reasonable inference from the underlying facts in favor of the nonmoving party and to refrain from weighing the evidence, making credibility determinations, or attempting to discern the truth of any factual issue in a manner which favors the moving party unless there is no reasonable alternative. See

<u>Matsushita</u>, 475 U.S. at 587; and <u>Morris v. City of Chillicothe</u>, 512 F.3d 1013, 1018 (8th Cir. 2008) (citing <u>Thomas v. Corwin</u>, 483 F.3d 516, 526-27 (8th Cir. 2007).

Procedurally, the movant bears the initial burden "of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." <u>Hartnagel v. Norman</u>, 953 F.2d 394, 395 (8th Cir. 1992) (citing <u>Celotex</u>, 477 U.S. at 323). Once the movant has carried his burden, the non-moving party is required "to go beyond the pleadings" and through "affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" <u>Celotex</u>, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(e)).

## 2. November 16, 2009, Incident

The first issue in the Defendants' Motion for Summary Judgment concerns Mr. Wright's original claim. In the original Complaint, Mr. Wright alleges that CCUSO staff members Bryon Kelly, Cindy Olson, Albin Carlson, and Janne Johnson were deliberately indifferent for failing to protect him from another CCUSO patient, Mr. Whitney. Mr. Wright

alleged that Mr. Whitney attacked him and stabbed him. See

Docket No. 18.

The Defendants' Brief sets out the relevant facts:

> On November 16, 2009, the patients were
> arguing over a light switch in a common
> area. Mr. Wright and Mr. Peterson were
> quibbling over whether it should be off or
> on – Mr. Wright kept turning it on. Staff
> intervened. By Mr. Wright's
> contemporaneous report, Mr. Whitney reached
> around staff to stab him in the cheek with
> a bic pen. Staff continued to intervene to
> calm the situation. CCUSO staff assisted
> Mr. Wright clean the wound and apply a
> band-aid. LPN Adam Benson checked in with
> Mr. Wright and Mr. Wright noted he'd be
> alright. ARNP Janne Johnson evaluated Mr.
> Wright, noting it was a "very superficial
> puncture wound." Mr. Wright was prescribed
> bacitracin ointment and cared for the wound
> himself. No further medical follow up was
> necessary. Mr. Wright testified he could
> have presented himself for medical clinic,
> but chose not to. He wore a band-aid over
> the injury for approximately five days.

Docket No. 33, Att. No. 2, p. 1-2.

Although an involuntarily committed patient of a state

hospital is not a prisoner per se, a patient's confinement is

subject to the same safety and security concerns as that of a

prisoner. Revels v. Vincenz, 382 F.3d 870, 874-75 (8th Cir.

2004) citing Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir.

2001) (holding that an excessive-force claim from an

involuntarily committed state hospital patient should be evaluated under the same standard as an excessive-force claim brought by pretrial detainee). However, because an involuntarily committed psychiatric patient is confined for treatment rather than incarcerated for the purpose of punishment following conviction, the Eighth Amendment does not apply. See Neely v. Feinstein, 50 F.3d 1502, 1508 (9th Cir. 1995); see also Youngberg v. Romeo, 457 U.S. 307, 324-325, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982) (concluding that an involuntarily committed patient has substantive due process rights under the Fourteenth Amendment and the Eighth Amendment was not the proper standard of liability).

That said, the 8th Circuit has applied the prisoner standard to involuntary patients. Revels, 382 F.3d 874-75. A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). The defendant's conduct must objectively rise to the level of a constitutional violation, Id., by depriving the plaintiff of the "minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 342 (1981). The defendant's conduct must also

reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner. Estelle v. Gamble, 429 U.S. 97, 104 (1977). To establish deliberate indifference, the plaintiff must show the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 835 (1994).

In their Motion for Summary Judgment, the Defendants' argue that:

> Mr. Wright raises three reasons why Defendants should have known Mr. Whitney posed a serious threat of harm. First, he alleges that Mr. Whitney was a "known racist" at the Iowa Department of Corrections. Even if this were true, which there is no evidence to believe it is, institutional officials "are not required to segregate indefinitely all inmates whose original crimes suggest they might be capable of further violence." Curry, 226 F.3d at 978.
>
> Mr. Wright suggests that the assault on Ms. Moye indicates that Mr. Whitney was dangerous. However, staff intervened and prevented Mr. Whitney from assaulting a patient, which is how Ms. Moye was injured. Mr. Wright used this incident as an opportunity to engage in aggression himself, and was restrained as a result. There is no evidence that Mr. Whitney threatened other patients in the manner that Mr. Wright suggests. Even if the

14

> threats were true, "deliberate indifference
> must be determined with regard to the
> relevant [institutional] official's
> knowledge at the time in question, not with
> 'hindsight's perfect vision.'" <u>Blades v.
> Schuetzle</u>, 302 F.3d at 804 (quoting <u>Jackson
> v. Everett</u>, 140 F.3d 1149, 1152 (8th Cir.
> 1998)).

Docket No. 33, Att. 2, p. 7-8. The Defendants go on to state that the fight on November 16, 2009, started over whether the lights should be on or off. The Defendants correctly point out that the 8th Circuit has repeatedly held that officials are entitled to qualified immunity on failure to protect grounds when an inmate is injured in a surprise attack/fight. See <u>Curry v. Crist</u>, 226 F.3d 974, 978-79 (8th Cir. 2000).

On this issue, it seems clear that Defendants' Motion for Summary Judgment must be granted. There is no evidence that the November 16, 2009, fight was anything more than a surprise attack. Moreover, it appears that CCUSO acted appropriately when the fight broke out. Accordingly, Defendants Bryon Kelly, Cindy Olson, Albin Carlson, and Janne Johnson are entitled to qualified immunity regarding the November 16, 2009, fight and that portion of Mr. Wright's Complaint must be dismissed.

Mr. Wright additionally alleges that Ms. Johnson failed to treat him after the fight. The deliberate indifference standard regarding medical care will be discussed fully in the next section. Suffice to say, there is no evidence that Ms. Johnson was indifferent to Mr. Wright's (superficial) wound after the November 16, 2009, fight. The wound was promptly bandaged and healed. Accordingly, the medical claim related to the stab wound must also be dismissed.

The Court also notes that Mr. Wright did not resist this portion of the Defendants' Motion for Summary Judgment. Instead, Mr. Wright filed his own Motion for Voluntary Dismissal, Docket No. 43, in which, as will be discussed further below, he argued that his claim should be dismissed, but without prejudice. Additionally, during the hearing, Mr. Tiefenthaler admitted that Mr. Wright's claims related to the November 16, 2009, fight could not succeed on their own.

### 3. Failure to Treat Prostate Cancer

Mr. Wright's general allegation is that he was injured by the Defendants' constitutionally inadequate medical care. Specifically, Mr. Wright argues that had CCUSO provided constitutionally sufficient medical care, his prostate cancer,

if not prevented, would have been discovered and treated much earlier.

At the outset, the Court notes that, "[p]ersons who have been involuntarily committed are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." <u>Youngberg v. Romeo</u>, 457 U.S. 307, 321-22 (1982). There has been some debate regarding the appropriate standard in this type of case. The Defendants argue that the deliberate indifference standard applies, while the Plaintiff argues that the <u>Youngberg</u> case, cited above, should control.[3]

This Court has previously endorsed the <u>Youngberg</u> standard. See 5:11-CV-4055-DEO, Docket No. 48, where the Court stated:

> [a]fter reviewing relevant case law, this Court is persuaded that deliberate indifference is inapplicable. Because deliberate indifference analysis is typically employed in Eighth Amendment cases involving prisoners, its application to involuntarily committed wards of the State, whom "are entitled to more considerate treatment than criminals whose conditions of confinement are designed to punish," is inappropriate. <u>Youngberg v.</u>

---

[3] In his brief, Mr. Wright also cites both the deliberate indifference standard and the <u>Youngberg</u> standard. However, during the hearing, Mr. Tiefenthaler, Mr. Wright's attorney, argued that <u>Youngberg</u> alone was appropriate.

Romeo, 457 U.S. 307, 321-22 (1982). "The State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication in accordance with due process of law." DeShaney v. Winnebago County Dep't of Soc. Servs., 489 U.S. 189, 199 n. 6 (1989).

In Youngberg v. Romeo, the Supreme Court specifically indicated that the deliberate indifference test is inapplicable to involuntarily committed persons. 457 U.S. at 312, n. 11. Though the Eighth Circuit has subsequently used the deliberate indifference test in relation to involuntarily committed patients, they did so because "neither party . . . questioned the applicability of the Eighth Amendment." 382 F.3d at 874. However, the parties to an action cannot alter applicable law simply because they agree to, and Supreme Court case law takes precedent over Eighth Circuit case law. The Youngberg Court recognized that though the Eighth Amendment is inapplicable, involuntarily committed persons have substantive rights arising under the Fourteenth Amendment. 457 U.S. at 315. Though "a State is under no constitutional duty to provide substantive services for those within its border... [w]hen a person is institutionalized," the State "has a duty to provide certain services and care..." Id. at 317. Among the most basic substantive liberty interests to which involuntarily committed persons are entitled are rights "to adequate food, shelter, clothing, and medical" care. Id. at 315.

However, "a State necessarily has considerable discretion in determining the nature and scope of its responsibilities." Id. at 317. "In determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance 'the liberty of the individual' and 'the demands of an organized society.'" Id. at 320 (citing Poe v. Ullman, 367 U.S. 497, 542 (1961)). In addition, a court should keep their interference with the operations of State operated civil commitment facilities to a minimum. Id. at 322. "[T]here certainly is no reason to think judges or juries are better qualified than appropriate professionals in making" the difficult decisions necessary to run such facilities. Id. at 323.

Though specifically dealing with the treatment of an involuntarily committed patient's mental condition which was the basis of his commitment, this Court is persuaded that the standard crafted in Youngberg is applicable here. See McDonald v. Eilers, 1988 WL 131360 (E.D. Pa. 1988) (applying Youngberg in case involving the adequacy of medical treatment). In Youngberg, the Court stated that the decision in question, "if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." 467 U.S. at 323.

5:11-CV-4055-DEO, Docket No. 48, p. 13-16.

The Court is aware that its determination regarding the _Youngberg_ standard of care is on appeal before the Eighth Circuit Court of Appeals in at least one case. See 11-CV-4055-DEO. The Court remains convinced that _Youngberg_ is the appropriate standard. However, because the Court is persuaded that in this case, the outcome will be the same regardless of whether it applies _Youngberg_ or deliberate indifference, it will apply the more stringent deliberate indifference test. To that end, the:

> Eighth Amendment's prohibition against cruel and unusual punishment, which embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency," prohibits punishments which are incompatible with "the evolving standards of decency that mark the progress of a maturing society." _Estelle v. Gamble_, 429 U.S. 97, 102 (1976). It thus requires that the government provide "medical care for those whom it is punishing by incarceration." _Id._ at 103. The Eighth Amendment safeguards the prisoner against a lack of medical care that "may result in pain and suffering which no one suggests would serve any penological purpose." _Id._ Accordingly, "deliberate indifference to serious medical needs" of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution. _Id._ at 104.

_Rodriguez v. Plymouth Ambulance Serv._, 577 F.3d 816, 828 (7th Cir. 2009) (parallel citations omitted). Although in a

slightly different situation, the 8th Circuit Court of Appeals has applied the deliberate indifference standard to civilly committed sexually violent predators. See, Senty-Haugen v. Goodno, 462 F.3d 876, 889 (8th Cir. 2006) where the 8th Circuit applied the deliberate indifference standard to a medical care claim raised by a patient involuntarily committed as a sexually violent predator; however, in that case, neither side objected to the standard of care.

Under the deliberate indifference standard, Mr. Wright must show the Defendants were deliberately indifferent to a serious illness or injury. Senty-Haugen, 462 F.3d at 889. A successful deliberate indifference claim is comprised of both an objective and a subjective element. Farmer v. Brennan, 511 U.S. 825, 834 (1994). First, Mr. Wright must demonstrate that, objectively, the deprivation he suffered was "sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities." Walker v. Benjamin, 293 F.3d 1030, 1037 (7th Cir. 2002). In the medical care context, this objective element is satisfied when a plaintiff demonstrates that his medical need itself was sufficiently serious. Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). Second, Mr. Wright must establish that

the defendants acted with a "'sufficiently culpable state of mind'" to support liability under § 1983. <u>Greeno v. Daley</u>, 414 F.3d 645, 653 (7th Cir. 2005).

Although negligence or inadvertence will not support a deliberate indifference claim, a plaintiff need not establish that prison officials actually intended harm to befall him from the failure to provide adequate care. <u>Walker</u>, 293 F.3d at 1037. "[I]t is enough to show that the defendants knew of a substantial risk of harm to [the plaintiff] and disregarded the risk." <u>Greeno</u>, 414 F.3d at 653. A successful plaintiff need not show that he was literally ignored in his demands for medical treatment, and a defendant's showing that a plaintiff received some treatment does not resolve the issue conclusively if the treatment was "blatantly inappropriate." <u>Greeno</u>, 414 F.3d at 653-54 (internal citations and quotation omitted). Finally, the Eighth Amendment "protects [a plaintiff] not only from deliberate indifference to his or her current serious health problems, but also from deliberate indifference to conditions posing an unreasonable risk of serious damage to future health." <u>Board v. Farnham</u>, 394 F.3d 469, 479 (7th Cir. 2005). "Deliberate indifference must be measured by the official's knowledge at the time in question,

not by 'hindsight's perfect vision.'" <u>Schaub v. VonWald</u>, 638
F.3d 905, 915 (8th Cir. 2011) (citing <u>Lenz v. Wade</u>, 490 F.3d
991, 993 n.1 (8th Cir. 2007)).

Thus, under this standard, the Defendants argue that Mr.
Wright must prove that CCUSO officials, specifically Ms.
Benson and Ms. Johnson, knew about excessive risks to his
health but disregarded them, and that their unconstitutional
actions in fact caused his injuries. <u>Senty-Haugen</u>, 462 F.3d
at 890. For the purposes of trial, their argument is correct.
However, presently before the Court is a Motion for Summary
Judgment. As noted above, at this stage of the case, the
claim must be allowed to proceed if Mr. Wright has alleged
facts from which a jury could find in his favor. Accordingly,
the Court must consider if there are facts in dispute. If
there is a genuine issue of material fact, summary judgment is
inappropriate.

Mr. Wright argues:

> The Defendants in this case were
> deliberately indifferent to the Plaintiff's
> development of prostate cancer. Plaintiff
> was in a high risk group for developing
> prostate cancer based upon several factors:
> 1) He was over 40 years of age; 2) He had
> a family history of his father dying of
> prostate cancer; 3) He was

African-American;[4] and 4) He had difficulty
with frequency and urgency of urination to
such an extent that he had to keep a can
next to his bed as he couldn't make it to
the restroom quick enough before needing to
urinate.

Docket No. 42, Att. No. 3, p. 1.

It is undisputed that Mr. Wright refused to let a female
nurse conduct rectal prostate exams. See for example Docket
No. 33, Att. No. 3, p. 50. However, Mr. Wright alleges that
he was never informed that those exams were to check for
prostate issues. As discussed above, Mr. Wright also informed
Ms. Johnson of issues he had with his urination, including the
fact that he could not make it through the night without
having to relieve himself. Instead of taking action, Ms.
Johnson allegedly chastised Mr. Wright for urinating in a
'coffee jar.' Mr. Wright argues that these facts meet the
first element of the deliberate indifference standard:

by the fact that the Plaintiff developed
prostate cancer and, due to the passage of
time, needed surgery to remove his
prostate. At the very least, there is a
dispute as to material facts as to whether
the Defendants' actions were sufficient in
the following areas: 1) informing the
Plaintiff of his likelihood and risks of
developing prostate cancer; 2) in
performing sufficient early testing to

---

[4] There is an allegation that African Americans are more
prone to prostate cancer.

24

> determine if the Plaintiff has prostate
> cancer; 3) in ignoring his early urination
> problems which were symptomatic of his
> prostate cancer; and 4) in failing to
> diagnose his prostate cancer before he
> needed surgery to remove his prostate.

Docket No. 42, Att. No. 3, p. 2-3.  Mr. Wright goes on to

argue that:

> There is also a dispute as to material
> facts in this matter regarding the second
> element of the deliberate indifference
> test. The Plaintiff had urinary
> difficulties with frequency, urgency,
> hematuria, and nocturia as early as 2009.
> The medical staff at CCUSO was aware of
> these problems as the Plaintiff had to keep
> a coffee jar by his bed to use as a urinal
> due to these symptoms. Instead of
> informing the Plaintiff that these could be
> signs of prostate cancer and making further
> inquiry into such, the Plaintiff was
> threatened with disciplinary action if he
> didn't quit using his make-shift urinal.
> Such conduct shows deliberate indifference.

Docket No. 42, Att. No. 3, P. 3-4.

The Defendants respond by saying that:

> Mr. Wright is alleging that Ms. Johnson and
> Ms. Benson failed to detect his cancer.
> Mr. Wright refused digital rectal exams.
> Mr. Wright refused some physicals. It was
> the PSA test ordered by Ms. Benson that
> detected his cancer. When Mr. Wright
> received a digital rectal exam at the
> University of Iowa Hospitals and Clinics,
> the prostate was not noted to be enlarged
> for his age, and there was no nodularity.
> This means that Mr. Wright's cancer was not
> detectable with a digital rectal exam. The

> PSA was the only reason this cancer was
> detected. Ms. Benson caught Mr. Wright's
> cancer early, before it was detectable upon
> digital exam. He received thorough
> treatment at UIHC and has had a good
> recovery. Mr. Wright engaged in consensual
> sex with another patient at CCUSO,
> demonstrating that he has retained
> functionality despite his treatment.

Docket No. 33, Att. No. 2, p. 13.

The Court is persuaded that Mr. Wright is correct. As noted by both parties, the deliberate indifference standard is a two part test. The first question is whether a serious health issue is at stake, and the second question is whether the Defendants knew, or should have known, that their actions posed a substantial risk of harm. There is no real dispute that Mr. Wright has a serious health issue. He suffered from prostate cancer, the treatment of which required doctors to remove his prostate. Thus, the real question is whether Ms. Benson and/or Ms. Johnson should have known that their care, or lack thereof, posed a serious risk to Mr. Wright.

There is a significant fact question whether Ms. Johnson should have known that the urinary issues Mr. Wright complained of, including not being able to make it through the night without urinating, were precursors to prostate cancer. There is a serious fact question on whether Ms. Johnson should

have acted on that information. (Being told that a person is having to urinate in a jar, but refusing to act on that information seems the very, non-legal, definition of deliberate indifference). Moreover, while it is true that Mr. Wright refused digital rectal exams, the refusal of medical service forms which he signed do not explain why those test were offered, or specifically that they are done to screen for prostate cancer. There is a fact question regarding whether Mr. Wright was at an elevated risk of developing prostate cancer. The answer to that question impacts whether Ms. Benson and Ms. Johnson were putting Mr. Wright at risk by not explaining that he needed to submit to the digital rectal exam and blood tests to screen for prostate cancer. (The Defendants argue that Mr. Wright never informed them that he had a family history of prostate cancer, but that simply leads to the question of whether Ms. Johnson and Ms. Benson should have inquired about Mr. Wright's family history. It is common knowledge that family histories are routine part of most medical exams).

Mr. Wright also states that he would have submitted to digital rectal exams had they been conducted by a male. The Defendants deny he made such a request. Again, this is a fact

question.  Finally, the Defendants argue that a digital rectal exam would not have revealed the prostate cancer any earlier than the blood test did.  However, that too is a fact question.  In the context of a Motion for Summary Judgment, the Court must give the non-moving party the benefit of the doubt regarding those types of factual controversies.  Both parties have alleged that Dr. Tracy, Mr. Wright's treating physician, has made statements that support their argument.  However, nothing Dr. Tracy has said has been made a part of this record.  Accordingly, whose position he supports, and to what extent, is also a fact question that must be reserved for the time of trial.

For the forgoing reasons, the Court is persuaded that a fact question exists regarding Ms. Benson and Ms. Johnson's treatment of Mr. Wright, and whether that treatment was deliberately indifferent.  The Defendants' Motion for Summary Judgment regarding the prostate cancer claim is denied.

### 4.  Qualified Immunity

Defendants next argue that they are entitled to a defense of qualified immunity.  As government officials, the CCUSO Defendants argue that they are entitled to qualified immunity for the performance of discretionary functions.  <u>Davis v.</u>

<u>Hall</u>, 375 F.3d 703, 711 (8th Cir. 2004). Qualified immunity exists "to protect public officials from the 'broad-ranging discovery' that can be 'peculiarly disruptive of effective government.'" <u>Anderson v. Creighton</u>, 483 U.S. 635, 646 (1987) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 817 (1982)).

To defeat the Defendants' claim of qualified immunity, the Plaintiff must show how each Defendant's individual conduct violated a "clearly established statutory or constitutional right of which a reasonable person would have known." <u>Id.</u> The Supreme Court has established a two step sequential evaluation process to resolve questions of qualified immunity.[5] <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). The "'threshold question'" is whether the facts, taken in a "'light most favorable to the party asserting the injury,'" demonstrate the defendant's "'conduct violated a constitutional right'" of the plaintiff. <u>Scott v. Harris</u>, 550 U.S. 372, 377 (2007). If there is a "violation of constitutional right, 'the next, sequential step is to ask

_____

[5] More recently, in <u>Pearson v. Callahan</u>, the Supreme Court ruled that the sequential evaluation process outlined in <u>Saucier</u> was not mandatory; lower courts retain discretion whether to follow the <u>Saucier</u> procedure. 555 U.S. 223, 236 (2009).

whether the right was clearly established . . . in light of the specific context of the case.'" Id.

The first question in the sequential evaluation process is straight forward and merely asks if there is a constitutional violation under prevailing law. The second question in the sequential evaluation process requires that the "contours of the right . . . be sufficiently clear" such "that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202. "If the law did not put the [official] on notice that his conduct would be clearly unlawful," a motion to dismiss "based on qualified immunity is appropriate." Id. While the first and second steps are quite similar, the second step adds an additional dimension in that "reasonable mistakes can be made as to the legal constraints on particular" official conduct, regardless of whether or not there was an actual constitutional violation. Id., at 205.

The only remaining Defendants in this case are Ms. Benson and Ms. Johnson. Under the qualified immunity precedent discussed above, Mr. Wright must show that a constitutional violation exists under established law, and that Ms. Johnson and Ms. Benson knew, or should have known, that what they were

doing violated that clearly established law.  If Mr. Wright fails to prove those two elements, the Defendants are entitled to qualified immunity.

It is a long standing precedent that those individuals providing care to incarcerated or detained individuals have a duty to provide medical services that are not deliberately indifferent.  Accordingly, the first prong is easily satisfied.  There is no real question that Ms. Benson and Ms. Johnson were required to provide Mr. Wright with medical care that was not deliberately indifferent.  The second prong asks if Ms. Johnson and Ms. Benson should have known that the care they were providing to Mr. Wright violated the clearly established legal precedent.  As the Court stated in the previous section, there is a factual issue regarding whether the Defendants were deliberately indifferent to Mr. Wright's medical need.  Similarly, there is a fact issue regarding whether the Defendants knew, or should have known, that their care was constitutionally deficient.  The Court cannot say, for example, that Ms. Johnson's (alleged) decision to ignore Mr. Wright's inability to control his bladder through the night did not violate clearly established law.  Accordingly, Mr. Wright has created a fact issue that satisfies the second

qualified immunity inquiry and the Defendants' Motion for Summary Judgment on qualified immunity grounds must be denied.

The Defendants also argue that they are not personally responsible. As has been discussed extensively above, Ms. Benson and Ms. Johnson were involved in Mr. Wright's care throughout his commitment at CCUSO. Accordingly, they are appropriate, personally responsible, parties in this case.

### C. Motion for Voluntary Dismissal

The final issue the Court must take up is the Plaintiff's Motion for Voluntary Dismissal. This Motion deals with Mr. Wright's claims regarding the fight that occurred on November 16, 2009. As discussed above, rather than argue that the Defendants' Motion for Summary Judgment on that issue should be denied, Mr. Wright choose to file a Motion for Voluntary Dismissal.

Mr. Wright did not file his Motion for Voluntary Dismissal until after the Defendants filed an Answer and filed the above referenced Motion for Summary Judgment, Docket No. 33. Under Federal Rule of Procedure 41(b), the Plaintiff cannot voluntarily dismiss an action after the Defendants file a Motion for Summary Judgment unless the Court rules that it

is appropriate.   In this case, the Court is persuaded that granting voluntary dismissal is not appropriate.

Mr. Wright's claim related to the November 16, 2009, fight is old.   If the Court allowed the Plaintiff to voluntarily dismiss without prejudice, and the Plaintiff chose to refile the case, the Court would likely have to deny it at the initial review stage on statute of limitation grounds. Moreover, as discussed in Section B, starting on page 9, there is no evidence to support Mr. Wright's claim that the Defendants were deliberately indifferent to serious threat of harm and the Defendants are entitled to qualified immunity on that claim.   Additionally, Mr. Wright's injury, which was fixed by a band-aid, is unlikely to be considered so severe that an award of damages would be appropriate.

The Plaintiff states in his brief:

> The Plaintiff is requesting that dismissal be without prejudice to allow the claim to be possibly re-filed in the future as part of an ongoing pattern of conduct of the Defendants and provide the Plaintiff with more time to gather evidence in support of his claim should he choose to refile it at a later date.

Docket No. 43, p. 1-2.  As indicated above, refiling the case would likely be barred by a statute of limitations.  Also, as indicated in Section B, the claim fails as a matter of law.

33

Additionally, Mr. Wright has no standing to bring claims based on things that happened to other CCUSO inmates. So his "pattern of conduct" claim would fail at the initial review stage.

For those reasons, the Court must deny Mr. Wright's Motion to Voluntarily Dismiss his claim related to the November 16, 2009, fight/stabbing, Docket No. 43.

## V. CONCLUSION

For the reason set out above, the Defendant's Motion to Dismiss Janne Johnson on statute of limitations grounds, Docket No. 29, is denied. The Defendant's Motion for Summary Judgment, Docket No. 33, is granted in part and denied in part. Mr. Wright's claims related to the November 16, 2009, fight are dismissed with prejudice, but his claim related his prostate cancer will be allowed to proceed. Pursuant to the partial granting of the Motion for Summary Judgment, Defendants Bryon Kelley, Cindy Olson, and Albin Carlson are hereby dismissed from the case. The Plaintiff's Motion for a Voluntary Partial Dismissal, regarding the November 16, 2009, fight, Docket No. 43, is denied.

**IT IS SO ORDERED** this 30th day of September, 2013.

_Donald E. O'Brien_
Donald E. O'Brien, Senior Judge
United States District Court
Northern District of Iowa